SUGGS v. TERNSTEDT MANUFACTURING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CLAIM OF APPEAL—DEPARTMENT MAY EXTEND TIME FOR CLAIMING APPEAL ON GOOD CAUSE SHOWN—CLAIM HEARD ON MERITS.

In view of the fact that the department of labor and industry has power to extend the time for claiming review of an order of a deputy commissioner, on good cause shown, where a claim of review of an order denying compensation, under the workmen's compensation act, for the loss of an eye, was received within the ten days, but was not opened and stamped until the following day, and the department heard the case on its merits, it will be assumed, on certiorari, that the department would have extended the time, had request therefor been made, and the Supreme Court will, therefore, dispose of the case on its merits.[1]

2. SAME — LOSS OF EYE — WHERE INJURED EYE DOES NOT COORDINATE WITH OTHER EYE WHEN GLASS USED.

An employee, who, in the course of his employment, received an accidental injury to his right eye, which left him with but one-sixtieth of his normal vision therein, was properly awarded compensation, under the workmen's compensation act, as for the loss of an eye, although it was shown that, with the use of a strong glass, the vision of said eye was above normal, where it was also shown that, when the glass was so used, said eye would not coordinate with the left eye.[2]

Certiorari to Department of Labor and Industry. Submitted October 20, 1925.    (Docket No. 104.)    Decided December 22, 1925.

Andrew Suggs presented his claim for compensation against the Ternstedt Manufacturing Company for an accidental injury in defendant's employ.    From an order awarding compensation, defendant and the Royal

[1]Workmen's Compensation Acts, C. J. § 143; [2]Id., C. J. § 88. Giving notice of injury and filing claim for compensation under compensation acts, see notes in L. R. A. 1916A, 83, 244; L. R. A. 1917D, 135; L. R. A. 1918E, 556.
Compensation for loss or impairment of eyesight, generally, see notes in 8 A. L. R. 1324; 24 A. L. R. 1466.

Indemnity Company, insurer, bring certiorari.   Affirmed.

*F. L. Kelley*, for appellants.

*J. Nelson Pyle*, for appellee.

FELLOWS, J.   Plaintiff received an injury by a particle of steel becoming imbedded in his right eye. That the accident arose out of and in the course of his employment is conceded.   As a result of the injury a traumatic cataract formed which was removed by an operation, the expense of which was borne by defendant.   Since the operation plaintiff has one-sixtieth normal vision without the use of a glass, but with a strong glass his vision with that eye is above normal, but his two eyes do not co-ordinate.   If he uses the uninjured eye, he can not wear the strong glass on the other; if he uses the injured eye with the strong glass he must cover the other eye.   The eminent specialist, Dr. Campbell, testified:

"Yes, before he could use this injured eye he must have a very strong glass, and that very strong glass so mixes him up with the other eye that he cannot utilize it.   So, consequently, if he ever uses this eye, it will have to be when the other eye is excluded from vision.   This is a common thing with corneal cataract.   *   *   *
"Q. Doctor, then, in your opinion, has the applicant lost the useful vision of his right eye?
"A. I might answer that by saying that industrially he has lost the use of the vision of that eye."

The testimony establishes that while plaintiff has useful vision with each eye, he can use but one of them at a time, and the commission, reversing the finding of the deputy commissioner, held that he was entitled to the statutory compensation for the loss of an eye.

Preliminary to the main question, it is insisted that

the claim for review was not made within the ten days.     The return shows that the claim was received within the time but the letter was not opened and the claim stamped until the following day.     The commission had the power to extend the time; it declined to dismiss the case, and heard it on its merits.     If the actual date of receipt controls, the claim was seasonably filed; if not, the commission having declined to dismiss and having disposed of the case on its merits, we may assume it would have extended the time as good cause appears for such extension, and it would profit no one to dispose of the case for this technical reason and send the case back only to have it up here again on the main question.     We shall, therefore, dispose of the case on its merits.

The main question is new to this court but it has received the attention of the courts in several other jurisdictions.     *Frings* v. *Pierce-Arrow Motor Car Co.,* 182 N. Y. App. Div. 445 (169 N. Y. Supp. 309), was very like the instant case.     It sustains defendants' contention.     The workman with the aid of a proper glass had at least normal vision with the injured eye, but it would not with such glass co-ordinate with the uninjured eye.     It was held that he had not lost an eye or the use of an eye; two justices, however, dissented.     The same division had the question before it again in *Smith* v. *F. & B. Construction Co.,* 185 N. Y. App. Div. 51 (172 N. Y. Supp. 581), where by the use of glasses the workman had but one-third vision with the injured eye and sustained the award for the loss of an eye.     The court distinguished the case in this particular from the former holding where the workman by the use of a proper glass had normal vision, and said that the "rule in the *Frings Case* should not be extended beyond the facts there found."

The supreme court of Illinois had the same question before it in *Juergens Bros. Co.* v. *Industrial Com-*

*mission,* 290 Ill. 240 (125 N. E. 337). It was there said:

"Plaintiff in error contends that should Kaage lose the sight of his good eye he could by the use of lenses gain the use of the injured eye, and therefore he has not lost the sight of the injured member. The question before this court is whether or not this man has for all practical uses and purposes lost his eye. The application of laws of this character should not be made to depend upon fine-spun theories based upon scientific technicalities, but such laws should be given a practical construction and application. For all practical purposes when a person has lost the sight of an eye he has lost the eye, and to say that the statute providing compensation for the loss of the sight of an eye does not apply here because of the remote possibility of Kaage losing his good eye, whereby he can through artificial means gain a certain amount of use of the injured member, is to place a construction on a remedial act which deprives it of all practical effect. Such could not have been the intention of the legislature in passing this act."

To the same effect will be found *O'Brien's Case,* 228 Mass. 211 (117 N. E. 1), and *Stefan* v. *Elevator Co.,* 106 Kan. 369 (187 Pac. 861) ; and in *Purcell* v. *International Motor Co.,* 91 N. J. Law, 707 (103 Atl. 860, 104 Atl. 894), and *Oliver* v. *Christopher,* 98 Kan. 660 (159 Pac. 397), it was held that the failure of the eyes to co-ordinate could be considered in cases involving partial disability under the statutes of the respective States. These are the only cases dealing directly with this question which we have been able to find in the time at our disposal. The weight of authority sustains the findings of the commission and we are persuaded that the reasoning of the majority cases is fundamentally sound.

The award will be affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.