GUIDO MARTINUZZI *vs.* CAPITOL MARBLE & TILE CO., INC.

NOVEMBER 26, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

116

Condon, J. This is a petition under general laws 1938, chapter 300, article II, §12, as amended by public laws 1941, chap. 1056, for compensation for a specific injury to petitioner's right eye. From a decree of the superior court denying and dismissing his petition he has appealed to this court. Under such appeal he contends that the trial justice erred in holding that the undisputed facts in evidence were not sufficient to bring his injury within the purview of §12 (d).

Those facts are that petitioner was injured on April 13, 1950 when a chisel which he was using in his work as a marble setter broke, resulting in particles of the chisel and the marble entering his right eye. After an operation on April 15 for the removal of the foreign bodies it was found that a cataract with secondary glaucoma had formed. The cataract was removed September 27, 1950. A final operation described as a "discission of secondary membrane" was performed March 7, 1951. Thereafter it was definitely determined that his unaided vision is now 10/200, but with the aid of a cataract lens it is 20/30 in the injured eye. However, petitioner cannot wear such a lens and use his left eye because to do so results in double vision. As long as he uses his left eye the impaired vision in his right eye will continue, but in the event that he should lose his left eye he would still have good vision, with the aid of a cataract lens, in the injured right eye. In other words the evidence is undisputed that useful vision in that eye can be recovered if the need for it should arise.

Under §12 (d) it is provided that in addition to all other

compensation there shall be paid concurrently therewith specific compensation "For the entire and irrecoverable loss of the sight of either eye, or the reduction to one-tenth or less of normal vision with glasses, for a period of 120 weeks" at not less than $8 nor more than $20 per week. Such compensation is not dependent upon the injured employee being incapacitated by his injury from earning wages. It is in addition to compensation for incapacity and is more in the nature of damages for the specific injury. *Steele* v. *Darlington Fabrics Corp.*, 78 R. I. 272.

Compensation for incapacity by reason of a specific injury to an employee's eyes is expressly covered by art. II, §10 (a), which provides that total incapacity is conclusively presumed by proof of "the total and irrecoverable loss of sight in both eyes or the reduction to one-tenth or less of normal vision with glasses * * *." It will be noted that in this section where the legislature was dealing with the loss of sight in both eyes it carefully expressed its intention accordingly by using the word "both" and not the word "either." And the same thing is true in §12 (a) which provides additional compensation for specific loss of sight in *both* eyes or for reduction to one tenth or less of normal vision with glasses.

In §12 (d), however, the word "both" is absent and instead the word "either" is used. That section speaks not of any loss of vision in both eyes functioning together but of such loss in *either* eye. Apparently the legislature, having dealt in §12 (a) with the loss of vision in both eyes functioning together, desired to make still further provision for each eye considered separate and apart from the other, and hence aptly used the word "either" to make its intention certain and definite. The question here is whether this language may be construed to apply by implication to a situation in which a reduction of nine tenths or more of normal vision in one eye cannot be corrected by glasses because such correction results in double vision in the use of both eyes.

Certainly there is nothing in the language of §12 (d) which expressly covers such a situation. Hence the claim is made that it is covered by implication.

The petition urges us to construe that section broadly so as to include a loss of binocular vision, notwithstanding the fact that when used alone his injured eye with glasses has a potential of much more than one tenth of normal vision in reserve. Such a construction he contends would be consonant with the liberal rule which this court long ago held should be applied in construing provisions of our workmen's compensation act. Since the instant case is one of novel impression in this state he cites no authority in support of his contention but relies on the following cases from other states where similar provisions in workmen's compensation acts have been thus broadly construed. *O'Brien's Case*, 228 Mass. 211; *Otoe Food Products Co.* v. *Cruickshank*, 141 Neb. 298; *Stefan* v. *Red Star Mill and Elevator Co.*, 106 Kan. 369; *Lindhout* v. *Brochu & Hass*, 255 Mich. 234; *Juergens Bros. Co.* v. *Industrial Comm'n*, 290 Ill. 420; *Purcell* v. *International Motor Co.*, 91 N.J.L. 707.

We are not certain from our reading of those cases that the statutes involved therein were like §12 (d) of our act, in providing additional compensation in the nature of damages. But if they were alike in this regard we are not persuaded that we should follow such cases. We think that to do so would require a strained construction of the plain language of that section. Our liberal rule of construction of the workmen's compensation act may not be pressed so far as actually to result in a distortion of the explicit language of the act. *Keyworth* v. *Atlantic Mills*, 42 R. I. 391. Unless this rule is kept within reasonable bounds, the inevitable result in circumstances like those in the case at bar could very well be unwarranted legislation by this court under the guise of adjudication.

In our opinion the language of §12 (d) is clear and definite and needs little or no construction. Its provisions

authorize an award of additional compensation only if the loss of sight in *either* eye is entire and irrecoverable or is reduced to one tenth or less of normal vision with glasses. We think it is not reasonably open to question that when the legislature employed the word "either" it intended to provide compensation for injury to each eye considered separately and without regard to any loss in the co-ordinated vision of both eyes functioning together. If it intended otherwise it could have easily expressed such an intention, in which event it would not have used the words "either eye" to refer to a loss of binocular vision which from its very nature presupposes normal functioning of *both* eyes and not merely *either* eye.

We find some support for that view in the following cases: *Gigleo* v. *Dorfman and Kimiavsky,* 106 Conn. 401; *Massett* v. *Armerford Coal Mining Co.,* 82 Pa. Super. 579; *Frings* v. *Pierce Arrow Motor Car Co.,* 182 App. Div. 445. The last-cited case was distinguished but not overruled in *Smith* v. *F. & B. Construction Co.,* 185 App. Div. 51. The difference in the two cases appears to be this. In the *Frings* case vision in the injured eye with glasses was almost normal and in the *Smith* case it was only one third of normal. In the latter case a majority of the court apparently felt that such a substantial reduced vision was tantamount to a loss of use of the eye, which was not so in the *Frings* case because in any event the worker there had *full* vision in the injured eye with glasses and thus could use either eye at pleasure.

The New York act, it may be observed here, did not provide indemnity for specific loss of vision as our act does but only compensation for disability to work. Therefore whatever may be the correct solution of the problem presented under that act in the *Smith* case, the facts in that case would not have been sufficient to bring it within the provision of our §12 (d) any more than would the facts in the *Frings* case. The decision for the petitioner in the *Smith* case incidentally was not actually based upon loss of

binocular vision. Since the *Frings* case, however, compensation for such a loss has been expressly provided by statute in New York.

It seems to us that the manner in which this question was finally settled in New York is the only proper way to settle it here. Where the statute is totally lacking in language from which a reasonable inference can be drawn that it was within the intention of the legislature to make loss of binocular vision compensable as if the sight of the eye alone was lost, it is solely the province of the legislature to supply the omission. This is especially so, it seems to us, when the statute is one which provides remedies unknown to the common law and indeed in derogation of it. Compensation for injury without fault as in the workmen's compensation act, and especially specific compensation under §12, is a child purely of legislation without any heritage in the common law.

It is highly appropriate therefore that this court should refrain from broadening by judicial interpretation the legislatively prescribed remedies in such a case unless, within the statute itself, we can find reasonable warrant for such action. Because we have been unable to find such warrant there, we must decline to interpret §12 (d) in order to make it applicable to the petitioner's injury. There is no error, therefore, in the decision of the trial justice.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Fergus J. McOsker,* for petitioner.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for respondent.